IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROEE TANAI,<br>        Plaintiff,<br><br>v.<br><br>SABER HEALTHCARE GROUP d/b/a<br>BRYN MAWR EXTENDED CARE<br>CENTER,<br>        Defendant. | CIVIL ACTION<br><br><br><br>NO.  23-3133 |

<u>MEMORANDUM</u>

HODGE, J.                                                                                                     November 4, 2025

In this action, Plaintiff Roee Tanai ("Tanai") asserts claims against his former employer, Bryn Mawr Healthcare Group, LLC ("Bryn Mawr"), incorrectly named Saber Healthcare Group d/b/a Bryn Mawr Extended Care Center, for race and sex discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") (Counts I–IV), and for unjust enrichment/quantum meruit (Count V). (ECF No. 1.) Bryn Mawr has moved for summary judgment on all claims. (ECF No. 17.) For the following reasons, Bryn Mawr's Motion is granted.

I.        **BACKGROUND**[1]

Tanai, a white man, began his employment at Bryn Mawr in February 2018 as the Nursing Home Administrator ("Administrator") for a skilled nursing facility. (ECF No. 20-2 ¶¶ 4–5, 7; ECF No. 20-7 at 9:21–25.) As the Administrator, Tanai was responsible for "the overall performance of the facility including, but not limited to, ensuring that the facility operated under the regulations and rules of the state and federal government and ensuring that the facility operates

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

under the guidelines, policies, and procedures of the company." (ECF No. 20-2 ¶ 8; ECF 17-4 at 85:15–86:22.) Tanai was also responsible for meeting the budget created by the corporate office. (ECF No. 20-2 ¶ 9; ECF 17-4 at 111:9–21.) Tanai was initially supervised by Ann-Marie Boyne ("Boyne"), a white woman. (ECF No. 20-2 ¶¶ 11–12.) In 2020, Cody Meenan ("Meenan"), a white man, replaced Boyne as Tanai's supervisor. (*Id.* ¶¶ 13–14.) Prior to Tanai's departure from Bryn Mawr, Meenan was promoted to Divisional Vice President of Operations, and Sharon Zeigler ("Zeigler"), a white woman, took over Meenan's prior role. (*Id.* ¶¶ 15–16.)

Tanai acknowledged that there were challenges within Bryn Mawr during his time as Administrator. (*Id.* ¶ 52.) He asserts that many of those challenges were due to the performance of the Director of Nursing, Maggie Scutt ("Scutt"). (*Id.* ¶ 53.) Scutt is a Black woman who began working at Bryn Mawr at least thirteen years before Tanai became the Administrator. (*Id.* ¶¶ 19–20.) Tanai raised his concerns regarding Scutt to Meenan several times, and the three met on multiple occasions to discuss Scutt's performance. (*Id.* ¶¶ 54–55.) Tanai testified that he was told by Boyne and Meenan that Scutt was "protected," although neither explained to him what they meant by this. (*Id.* ¶¶ 59, 61.) Tanai testified that because Scutt was "protected," he was not allowed to discipline her. (*Id.* ¶ 57.) Under Tanai's supervision of employees, he disciplined multiple employees, including department heads and housekeepers. (*Id.* ¶ 31.) Specifically, he issued performance improvement plans to two Black male department heads, and he upheld discipline given to a Black female employee through a grievance process. (*Id.* ¶¶ 32–33.)

During Tanai's tenure as Administrator, Bryn Mawr's net revenue declined notably. It is undisputed that there was a net loss, and it is undisputed that Tanai was responsible as the Administrator for meeting the budget. Tanai suggests it is unclear whether the financial figures in Defendant's Exhibit C (ECF No. 17-10) are cumulative (ECF No. 20-2 ¶ 10). However, the

affidavit of Meenan confirms that the figures are not cumulative (ECF No. 21-2)—as would simple arithmetic of the columns in the statement of operations—and so the loss figure is greater than $1,039,000 in Tanai's final year of employment. (ECF No. 20-2 ¶ 10.)

In January 2023, a resident left the Bryn Mawr facility without permission, which is known as an elopement. (ECF No. 20-2 ¶ 34; ECF No. 17-8.) The resident wheeled himself outside of the facility when the receptionist opened the door to let a family leave, and the receptionist did not see him exiting the facility. (ECF No. 20-2 ¶ 35.) Tanai was the direct supervisor of the receptionist. (*Id.* ¶ 36.) The Pennsylvania Department of Health ("Department of Health") came to Bryn Mawr to investigate the elopement on January 25, 2023. (*Id.* ¶ 39; ECF No. 17-8.) The Department of Health determined that the facility put the resident in immediate jeopardy to be harmed. (ECF No. 20-2 ¶¶ 40–41.) As a result, the Department of Health issued a citation of "serious harm," and required Bryn Mawr to implement a corrective action plan and pay civil money penalties. (*Id.* ¶¶ 42–43.) Less than a year before this elopement, Bryn Mawr received a G level deficiency from the Department of Health when two residents suffered harm, including a laceration to the forehead, left acetabular fracture, and fracture of the left distal femur. (*Id.* ¶ 45; ECF No. 17-9.)

Meenan testified that his opinion of Tanai's work performance was, "[a]s time went on, not strong," specifically because of the financial, clinical, and regulatory outcomes of the facility, which were the responsibility of the Administrator. (ECF No. 20-7 at 32:8–34:10.) Three days after the Department of Health's citation of "serious harm," Tanai met with Meenan, Zeigler, and Michelle Katzenmoyer, Regional Nurse (the "January Meeting"). (ECF 20-2 ¶¶ 21, 46.) Meenan provided Tanai with three options as a result of the Department of Health's findings and other performance concerns: (1) resign immediately; (2) give a thirty-day notice of his resignation; or (3) be put in an individual performance improvement plan ("IPIP"). (*Id.* ¶ 48.) Tanai selected the

3

second option, ultimately leaving his employment at Bryn Mawr on March 6, 2023. (*Id.* ¶¶ 49–51.) Tanai testified that Meenan never made any comments to him about his gender or race. (*Id.* ¶ 64.) After Tanai's departure from Bryn Mawr, three individuals have served in the Administrator role. (*Id.* ¶ 79.) The three individuals were all women, and two of them were not white. (*Id.* ¶¶ 79–80.)

Bonuses for the second half of the 2022 calendar year were paid on March 10, 2023. (*Id.* ¶ 68; ECF No. 17-12.) Bonuses for Tanai's position are governed by the "Bonus Program." (ECF No. 20-2 ¶ 65.) The Bonus Program requires that "employees must be actively employed on the check date to receive a bonus payment." (*Id.* ¶ 67; ECF No. 17-7.) Tanai was no longer employed at Bryn Mawr when bonuses were paid. (ECF No. 20-2 ¶ 68.) Had Tanai still been employed at Bryn Mawr when bonuses were paid, he likely would have been entitled to the semi-annual bonus for the second half of 2022. (*Id.* ¶ 74; ECF No. 21-1 ¶ 74.)

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-movant bears the burden of proof, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.   Race and Gender Discrimination

Title VII and the PHRA prohibit an employer from engaging in race discrimination against an employee. *See* 42 U.S.C. §§ 2000e-2, *et seq.*; Pa. Stat. Ann. tit. 43, §§ 951, *et seq.* Title VII race and sex discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). The Third Circuit has applied this framework to PHRA claims. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999) ("[T]he standards are the same for purposes of determining [a] summary judgment motion.").

Under *McDonnell Douglas*, a plaintiff can establish a prima facie case of employment discrimination by demonstrating that (1) he was qualified for the position he sought to retain; (2) he suffered from an adverse employment action; and (3) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir. 1999) (finding that membership of a minority group is not a requirement for cases of "reverse discrimination").

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The burden then shifts back to the plaintiff to show that the employer's stated reason is pretext for discrimination. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). If a plaintiff fails to raise a genuine issue of material fact as to any element of the prima facie case, summary judgment in favor of the defendant is warranted, and the Court need not consider the remaining burden shifting analysis of the *McDonnell Douglas* framework. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n.4 (3d Cir. 1999).

### 1.    Tanai's Prima Facie Case

Bryn Mawr argues that Tanai cannot establish a prima facie case because he cannot point to any evidence that he suffered an adverse employment action and that the action occurred under circumstances that could give rise to an inference of intentional discrimination. In response, Tanai asserts that determining whether the circumstances could give rise to an inference of intentional discrimination requires a credibility inquiry that is reserved for the jury and thus cannot be decided on summary judgment.

Tanai asserts that the options given to him in the January Meeting were not true options, and thus, he was forced to resign. (ECF No. 20-1 at 11–12.) A claim of constructive discharge constitutes an adverse employment action, which includes when the employee "was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169–70 (3d Cir. 2013) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)). To establish

constructive discharge, the plaintiff must demonstrate that the defendant "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984).

Bryn Mawr asserts that not only is there no evidence that Tanai's resignation was anything but voluntary, but there is no evidence that Bryn Mawr permitted "conditions of discrimination," let alone that conditions of discrimination were "intolerable." (ECF No. 17-1 at 7.) Tanai does not identify what the "conditions of discrimination" were, nor does he argue that those conditions were so intolerable that he was forced to resign. He states that he was not permitted to discipline Scutt because she was "protected"—which he assumed relates to her race and sex—but fails to show how this constitutes race and/or sex discrimination against *him*. Tanai offers nothing more to support his assertion of constructive discharged based on "conditions of discrimination." Thus, Tanai fails to meet his burden to establish constructive discharge.

Even if Tanai could establish an adverse employment action, he cannot establish an inference of discrimination. Circumstances giving rise to an inference of discrimination include derogatory or negative remarks, more favorable treatment to a similarly situated employee, or replacing the plaintiff with an individual not in their protected class. *See May v. PNC Bank*, 434 F. Supp. 3d 284, 296 (E.D. Pa. 2020).

The only evidence Tanai provides in support of an inference of discrimination is that after his departure from Bryn Mawr, the three individuals who had subsequently held his position were all women, and two of the three women were not white. (ECF No. 20-2 ¶ 79–80.) That a plaintiff was replaced by someone who is not a member of their protected class can support an inference of discrimination for a prima facie case. *Lazard v. All Restore, LLC*, No. CV 19-6040, 2021 WL 1175137, at *7 (E.D. Pa. Mar. 29, 2021) (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214

7

F. App'x 239, 242 (3d Cir. 2007)). However, the *McDonnell Douglas* inquiry "was never intended to be rigid" but rather "is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). The mere fact that subsequent employees in the Administrator role were not male and two of them were not white does not on its own create an inference of discrimination. *See Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 595 (E.D. Pa. 2017), *aff'd*, 708 F. App'x 48 (3d Cir. 2017).

Tanai has not demonstrated that he was treated less favorably than a similarly situated employee who is not in his protected class. While Tanai asserts that Scutt, a Black woman, was considered "protected," he raises this solely in the context of his ability to discipline her. Tanai does not argue that he and Scutt are similarly situated. Factors for determining if employees are similarly situated include whether the employees dealt with the same supervisor, were subject to the same standards, and shared similar job responsibilities. *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 525–26 (E.D. Pa. 2014). While there is no evidence presented as to Scutt's specific job role, there is no dispute that Tanai was her supervisor and that Meenan was Tanai's supervisor. While it is a question of fact for the jury whether individuals are similarly situated, summary judgment is appropriate when there is no evidence from which a jury could conclude the individuals were similarly situated. *Id.* at 526. Here, there is no evidence to support that Tanai and Scutt are similarly situated.

Tanai has provided no evidence of derogatory or negative remarks that give rise to an inference of discrimination. In fact, Meenan never made *any* comments to Tanai about his gender or race. (ECF No. 20-2 ¶ 64.) Tanai testified that Meenan did not have any other reason to present him with those three options at the January Meeting "except for the fact that I'm white, I'm a man,

I cannot – I don't know, I'm Jewish. I don't know." (EFC No. 20-2 ¶ 63, quoting ECF No. 17-4 at 62:14–20.)[2] But "[a]n inference of race-based discrimination cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action." *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 609 (E.D. Pa. 2014) (quoting *Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 702 (W.D. Pa. 2010)).

Tanai argues that because Meenan did not "provide any real specifics" (ECF No. 20-1 at 11) regarding Tanai's performance deficiencies, and that Title VII must be implicated because Scutt was referred to as "protected" (*id.* at 12), he has established an inference of discrimination. These arguments do not rise to the level of a prima facie case of discrimination. *See Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 610 (E.D. Pa. 2014) ("While the prima facie case is typically not an onerous burden, it is also not a meaningless standard that can be satisfied by unfounded suspicions of discrimination."); *see also Tucker v. Thomas Jefferson Univ*, 484 F. App'x 710, 712 (3d Cir. 2012) (affirming summary judgment where plaintiff's race discrimination claim was based solely on his subjective belief); *Dykes v. Marco Grp., Inc.*, 222 F. Supp. 3d 418, 429 (E.D. Pa. 2016) (granting summary judgment when plaintiff failed to point to evidence that could support a reasonable inference that his termination was motivated by racial discrimination).

Race and sex discrimination claims require that race and sex played a role in the adverse employment action. The record here is devoid of any evidence suggesting race or sex played any role in Tanai's departure from Bryn Mawr. Tanai therefore has not met his burden of establishing a prima facie case.

---

[2] Tanai does not allege in his Complaint that he was discriminated against based on religious beliefs, and he has affirmed that he is not pursuing that claim. (ECF No. 20-2 at 24 n.3.)

### 2. Justification and Pretext

If Tanai could establish a prima facie case, the burden would then shift to Bryn Mawr to articulate a legitimate, non-discriminatory basis. Bryn Mawr has met that burden by showing that Meenan had serious concerns with the financial performance and regulatory outcomes of the facility, including the two Department of Health citations specifically. (ECF No. 20-2 at ¶ 47.) Both the financial performance and regulatory outcomes were responsibilities of Tanai. (*Id.* ¶ 8.)

"Workplace performance issues may constitute a legitimate, non-discriminatory reason for an employee to be subject to an adverse employment action." *Varughese v. City of Allentown*, 5:23-cv-3804, 2024 WL 4655419, at *7 (E.D. Pa. Nov. 1, 2024). The record shows that the facility suffered financial loss, meeting the budget was among Tanai's responsibilities as Administrator, and Meenan expressed that this was among his concerns with Tanai's performance. Moreover, Meenan presented Tanai with the options of resigning or continuing under an IPIP shortly after the Department of Health's citation of "serious harm" that required Bryn Mawr to implement a corrective action plan and pay civil money penalties.

Even with the burden shifting back to Tanai, he cannot show that Bryn Mawr's justification is mere pretext. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764 (internal citations omitted). A plaintiff may demonstrate pretext by pointing to evidence in the record that would cause a reasonable juror to disbelieve the employer's justification, or that indicates the employer acted with discriminatory animus. *Burton v. Teleflex Inc.*, 707 F.3d 417, 430–31 (3d Cir. 2013). If a plaintiff's evidence relates to the credibility of the justification, that evidence "must demonstrate

such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). Pretext is not shown by evidence that "the employer's decision was wrong or mistaken." *Kaurtz v. Met-Pro Corp.*, 412 F.3d 463 (3d Cir. 2005) (quoting *Fuentes*, 32 F.3d at 765).

Tanai asserts that Meenan's inability to provide specific examples of his issues with Tanai's performance raises a credibility question. He further argues that proof of a discriminatory atmosphere can create pretext, although he does not identify which facts he suggests show a discriminatory atmosphere. The latter argument must fail for the same reason Tanai failed to establish an inference of discrimination at the prima facie stage—he has failed to identify any evidence suggesting discrimination towards him based on his race or his sex.

While Tanai suggests that Bryn Mawr's justification requires a credibility determination, his reasoning is solely that he finds the justification to lack specificity. Tanai has provided no evidence to suggest that Meenan's testimony that he had serious concerns with Tanai's performance as the Administrator due to the financial and regulatory outcomes of the facility was implausible, inconsistent, incoherent, or contradictory. As a result, even if Tanai had been able to establish a prima facie case, Tanai failed to meet his burden to show Bryn Mawr's justification was pretextual.

      **B.**    **Unjust Enrichment/Quantum Meruit**

Bryn Mawr argues that Tanai is not entitled to the semi-annual bonus for the second half of the 2022 calendar year because the Bonus Program requires employees to be employed with Bryn Mawr on the date of bonus distribution, and Tanai was not employed on that date.

Specifically, bonuses were paid on March 10, 2023, (ECF No. 20-2 ¶ 68; ECF No. 17-12), and Tanai's last day of employment was March 6, 2023 (ECF No. 20-4 at 11). Tanai responds that he met the requirements for earning the bonus, which are based on performance up until December 31, 2022; thus, the benefit to Bryn Mawr had already accrued and its retention by Bryn Mawr is unfair.[3]

Unjust enrichment is an equitable remedy available in the absence of a contract and is defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (quoting *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (2013)). The most significant element of an unjust enrichment claim is whether the enrichment was unjust. *See EBC Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 273 (3d Cir. 2010); *Ravin, Inc. v. First City Co.*, 692 A.2d 577, 582 (Pa. Super. Ct. 1997) ("[U]njust enrichment does not apply simply because the defendant has benefitted as a result of the plaintiff's work. The enrichment is not 'unjust' unless the defendant misled the plaintiff."). Similarly, quantum meruit is a quasi-contractual remedy. A claimant seeking quantum meruit must demonstrate that the defendant "wrongfully secured or passively received" a benefit that would be "unconscionable" for the defendant to retain. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).

Both parties rely on distinguishable case law in support of their respective positions. Bryn Mawr points to *Cappuccio v. Pfizer*, No. Civ.A. 07-549, 2007 WL 2593704, at *5 (E.D. Pa. Aug.

---

[3] Tanai suggests that he was forced to resign by a date prior to the date bonuses were paid. (ECF No. 20-1 at 10.) However, he provides no evidence that Bryn Mawr intentionally set the timing of his departure before the bonus distribution date. Moreover, the evidence supports that Tanai selected his departure from among three choices, one of which was to remain at Bryn Mawr under an IPIP.

31, 2007) for the proposition that an employee has not earned a bonus if they are no longer employed at the time payment comes due when that bonus requires an employee to be employed when payment comes due. However, that case involved a Pennsylvania Wage Payment Collection claim where the relevant bonus plan was a contract. Here, neither party asserts that the Bonus Program is a contract. As to Tanai, he points to *Oliver v. Univ. Health Servs.*, No. 22-4353, 2024 U.S. Dist. LEXIS 34932 (E.D. Pa. Feb. 29, 2024), which involved a referral bonus where it was disputed whether there was a condition on payment that required the recruited employee to work for a period of time before the recruiter received the bonus. Tanai asserts that his bonus was not contingent upon something occurring in the future, and so this Court, like the *Oliver* court, should deny summary judgment. However, the *Oliver* court denied summary judgment because the parties disputed whether the referral bonus, based on an oral agreement, was contingent on something occurring in the future. Here, both parties agree that the Bonus Program applies to Tanai's bonus, and so there are no disputed material facts.

The Court finds the recent case of *Eynon v. United States Steel Corp.*, 336 A.3d 983 (Pa. Super. Ct. 2025) instructive here. In that case, appellants brought an unjust enrichment claim for unpaid bonuses. The document governing that bonus plan provided that appellants were not promised a bonus, although appellants argued bonuses were routinely and consistently paid according to a specified incentive award formula. The Court found that appellants could not have reasonably expected payment of a bonus given the terms of the document governing the bonus plan.

Here, the Bonus Program provides that an employee must be employed by Bryn Mawr on the date that bonuses are paid. Given the terms of the Bonus Program, Tanai cannot show that he reasonably expected to receive a bonus. Tanai is incorrect in stating that "[t]his is not some future

13

benefit contingent upon something occurring in the future or a recruited employee working for a specific period of time." (ECF No. 20-1 at 15.) Payment of a bonus under the Bonus Program is explicitly contingent on active employment. Because Tanai was not actively employed when the bonus was paid, he was not entitled to receive a bonus. As such, the retention of the conferred benefit is not unjust.

## IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Defendant on all Counts (I–V) of Plaintiff's Complaint. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**